UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 10-60944-CIV-COHN/SELTZER

FIDENSIO FLORES FRANCO,

    Plaintiff,

vs.

CHRISTOPHER CALDWELL, and
ALFRED T. LAMBERTI, as Sheriff
of Broward County, Florida,

    Defendant.

_____/

## ORDER DENYING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

**THIS CAUSE** is before the Court on Defendant Deputy Christopher Caldwell's Motion for Summary Judgment [DE 29] ("Caldwell's Motion") and Defendant Alfred T. Lamberti's Motion for Summary Judgment [DE 30] ("Lamberti's Motion") (together, "Motions"). The Court has considered the Motions, Plaintiff Fidensio Flores Franco's Response [DE 33], Defendants' Reply [DE 42], the parties' related submissions, the record in this case, and is otherwise advised in the premises.

### I. BACKGROUND

This action concerns claims of false arrest/false imprisonment in violation of the Fourth and Fourteenth Amendments, pursuant to 42 U.S.C. § 1983, as well as false arrest/false imprisonment and malicious prosecution, pursuant to Florida law. The claims arise from an incident on September 2, 2007, when Defendant Deputy Christopher Caldwell, a Broward Sheriff's Office ("BSO") Deputy, arrested Plaintiff Fidensio Flores Franco.

Plaintiff works sporadic day jobs. See Exhibit B to Defendants' Statement of Undisputed Facts, Deposition of Fidensio Flores Franco [DE 31-2] ("Flores Franco Deposition") at 9:23-25, 11:1-3. On September 2, 2007, Plaintiff's friend, Juan Ramirez, called him to do a job moving furniture. Id. at 13:23-14:3, 14:18, 15:3-5. Mr. Ramirez told Plaintiff to meet at a nearby BP gas station in Fort Lauderdale, Florida, where a man with a truck would arrive and take them to the job. Id. 14:19-24, 15:3-10. The man with the truck was supposed to arrive at 3:50, but he never came. Id. 17:3-5.

The same day, Deputy Caldwell was on patrol in a marked BSO vehicle. Exhibit F to Defendants' Statement of Undisputed Facts, BSO Event Report [DE 31-6] ("Event Report") at 4. According to Deputy Caldwell, the BP gas station and the surrounding plaza is a gathering spot for panhandlers who beg customers for money as they exit the gas station and other stores and restaurants in the plaza. Exhibit E to Defendants' Statement of Undisputed Facts, Deposition of Christopher Caldwell [DE 31-5] ("Caldwell Deposition") at 31:1-32:5. The BP gas station had a trespass affidavit on file "due to unwanted individuals walking around the front of the business and asking entering and exiting customers for money, and/or by their very appearance, causing potential customers not to come in." Event Report at 4; see also Exhibit G to Defendants' Statement of Undisputed Facts, Probable Cause Affidavit [DE 31-7] ("Probable Cause Affidavit"); see also Exhibit C to Defendants' Statement of Undisputed Facts, Residential Trespass Affidavit [DE 31-3] ("Trespass Affidavit"). A trespass affidavit is placed on file when a business requests BSO's assistance regarding an ongoing problem with individuals congregating at the business. Caldwell Dep. at 50:7-15. BSO's Operating Procedures provide that if a business participates in the Trespass

Enforcement Program, a deputy is authorized to advise an alleged trespasser at that business of the offense and ask him to vacate the premises. Exhibit D to Defendants' Statement of Undisputed Facts, BSO Department of Law Enforcement Standard Operating Procedures [DE 31-4] ("Operating Procedures") §§ 4.15.4(A), (B). If the alleged trespasser refuses to vacate, the Operating Procedures provide, "the subject will be placed under arrest for the applicable trespassing violation." Id. § 4.15.4(C).

Around 5:15p.m., Deputy Caldwell observed Plaintiff and Mr. Ramirez at the BP gas station. Event Report at 4. Deputy Caldwell wrote in his Event Report that he "made contact with both Ramirez and Flores[ and] determined they had no business at this location." Id. Ultimately, he arrested Plaintiff for trespass after warning. Exhibit H to Defendants' Statement of Undisputed Facts, BSO Daily Patrol Activity Log [DE 31-8] ("BSO Daily Log") at 1; Probable Cause Affidavit at 1; see also Event Report at 4.

On June 5, 2010, Plaintiff filed the instant action against Caldwell, individually, and against Lamberti, as Sheriff for Broward County. See Complaint [DE 1]. The Amended Complaint [DE 8] alleges that Deputy Caldwell did not have probable cause or lawful authority to arrest him or, alternatively, that Deputy Caldwell acted outside the course and scope of his employment with BSO, and in bad faith or with malicious purpose. Plaintiff brings the following claims: false arrest/false imprisonment against Caldwell under 42 U.S.C. § 1983 (Count I); false arrest/false imprisonment against BSO (Count II), or alternatively against Caldwell in his individual capacity (Count III); and malicious prosecution against Caldwell (Count IV). Id.

On March 31, 2011, Deputy Caldwell filed his Motion for Summary Judgment, arguing that he is entitled to qualified immunity for the federal claim against him and

sovereign immunity under Florida Statutes § 768.28(9)(a) for the state law claims against him. See Caldwell Mot. The same day, Sheriff Lamberti filed his Motion for Summary Judgment, arguing that BSO is immune from suit under Florida Statutes § 768.28(9)(a) where Deputy Caldwell had probable cause to arrest Plaintiff.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(a), the Court may grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). To discharge this burden, the movant must show that "there is an absence of evidence to support the non-moving party's case." Id. at 325.

After the movant has met its burden, the burden of production shifts to the non-moving party, who "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact [the Court may] grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(3).

At the summary judgment stage, the Court's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). In

making this determination, the Court must decide which issues are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248.

### III. ANALYSIS

This case turns on the issue of probable cause. Deputy Caldwell argues that he is immune from suit and liability for Plaintiff's federal claim and state tort claims, focusing his argument on the contention that he did not violate Plaintiff's rights because he had probable cause to arrest Plaintiff. See Caldwell Mot. Deputy Caldwell further argues that the existence of probable cause bars the state law claims for false arrest/false imprisonment and malicious prosecution. See id. Similarly, Sheriff Lamberti argues that BSO is immune from suit where Deputy Caldwell had probable cause to arrest Plaintiff. See Lamberti Mot.

As discussed below, there is a genuine issues of material fact as to whether Deputy Caldwell had probable cause to arrest Plaintiff. Accordingly, the Court will deny both Motions for Summary Judgment.

#### A. Standard for Qualified Immunity

Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). To invoke qualified immunity, the public official must establish that he was

5

acting within the scope of his discretionary authority. Bates v. Harvey, 518 F.3d 1233, 1242 (11th Cir. 2008). The burden then shifts to the plaintiff to overcome the defense of qualified immunity. Id.

"A government official proves that he acted within the purview of his discretionary authority by showing 'objective circumstances which would compel the conclusion that his actions were undertaken pursuant to the performance of his duties and within the scope of his authority.'" Hutton v. Strickland, 919 F.2d 1531, 1537 (11th Cir. 1990) (quotations and citations omitted). Actions such as questioning witnesses, responding to calls, arresting suspects, and escorting those suspects to jail fall within the scope of a deputy's discretionary authority. See Riebsame v. Prince, 267 F. Supp. 2d 1225, 1237 (M.D. Fla. 2003) affirmed 91 Fed. App'x 656 (11th Cir. 2004). Here, Deputy Caldwell was on patrol when he observed Plaintiff and Mr. Ramirez, approached and talked to them, arrested them, and escorted them to jail. Such actions fell within the scope of Deputy Caldwell's discretionary authority as a deputy. Though Plaintiff argues that Deputy Caldwell "had no legal authority to trespass warn [Plaintiff] in the first instance," Resp. at 9, because "law enforcement officers are not 'authorized persons' for purposes of issuing trespass warning under Florida Statute §§ 810.08(3) or § 810.09(3)," id., BSO's Operating Procedures authorize a deputy to warn a suspected trespasser at a business that participates in the Trespass Enforcement Program. Operating Procedures §§ 4.15.4(A), (B). The trespass affidavit on file for BP Gas Station specifically stated, "Sworn deputies of the Broward Sheriff's Office are authorized representatives to enforce Florida Statute Sections 810.08 and 810.09 (Trespass) and to warn/direct any person(s) to leave the premises of . . . BP Gas Station." Trespass

6

Affidavit. Therefore Deputy Caldwell has successfully established that he acted within the scope of his discretionary authority, and the burden shifts to Plaintiff to overcome the qualified immunity defense. See Bates, 518 F.3d at 1242.

The analysis for qualified immunity involves a two-part inquiry. Saucier v. Katz, 533 U.S. 194, 201 (2001). First, the Court asks, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" Id. "If, assuming the plaintiff's allegations are true, no such right would have been violated, the analysis is complete." Davis v. Williams, 451 F.3d 759, 762 (11th Cir. 2006). If, however, "a constitutional violation can be made out on the plaintiff's facts, [the Court must] determine 'whether, at the time of the incident, every objectively reasonable police officer would have realized the acts violated already clearly established federal law.'" Id. (quoting Garrett v. Athens-Clarke County, 378 F.3d 1274, 1278-79 (11th Cir. 2004)). Though the Saucier protocol previously required courts to address the two prongs in order, courts now have discretion to decide which prong to address first in light of the circumstances of the particular case, see Pearson v. Callahan, 129 S. Ct. 808, 819 (2009). Essentially, to meet his burden here, Plaintiff must prove both that there was a violation of a constitutional right and that the right was clearly established.

In Count I, Plaintiff brings a 42 U.S.C. § 1983 claim based on the allegation that Deputy Caldwell "violated Plaintiff's clearly established rights under the Fourth and Fourteenth Amendments . . ." Am. Compl. ¶ 25. The Fourth Amendment, made applicable to the states by the Fourteenth Amendment, Mapp v. Ohio, 367 U.S. 643 (1961), protects the right to be free from unreasonable searches and seizures. U.S.

Const. amend. IV. "[I]t is clearly established that an arrest made without probable cause violates the Fourth Amendment." Davis, 451 F.3d at 762 (citing Thornton v. City of Macon, 132 F.3d 1395, 1399 (11th Cir. 1998); Von Stein v. Brescher, 904 F.2d 572, 579 (11th Cir. 1990)). Therefore, Plaintiff meets his burden if he proves that Deputy Caldwell violated his Fourth Amendment rights by arresting him without probable cause.

### B. A Disputed Issue of Fact Exists as to Whether Deputy Caldwell had Probable Cause to Arrest Plaintiff

Probable cause exists when "law enforcement officials have facts and circumstances within their knowledge sufficient to warrant a reasonable belief that the suspect had committed or was committing a crime." Case v. Eslinger, 555 F.3d 1317, 1327 (11th Cir. 2009) (quotations and citations omitted). "[P]robable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." Illinois v. Gates, 462 U.S. 213, 245 n.13 (1983). However, "[i]n the context of a claim for false arrest, an officer is entitled to qualified immunity where that officer had 'arguable probable cause,' that is, where 'reasonable officers in the same circumstances and possessing the same knowledge as the Defendants could have believed that probable cause existed to arrest' the plaintiff." Davis, 451 F.3d at 762 (quoting Kingsland v. City of Miami, 382 F.3d 1220, 1232 (11th Cir. 2004); Von Stein v. Brescher, 904 F.2d 572, 579 (11th Cir. 1990)). To determine whether Deputy Caldwell had arguable probable cause to arrest Plaintiff, the Court must look to the totality of the circumstances. Davis, 451 F.3d at 762. As noted above, because this case is at the summary judgment stage, the Court must view the totality of the circumstances in the light most favorable to Plaintiff, the nonmoving party. Id. (citing Skrtich v. Thornton, 280

8

F.3d 1295, 1299 (11th Cir. 2002); Evans v. Stephens, 407 F.3d 1272, 1277 (11th Cir. 2005)).

Plaintiff claims Deputy Caldwell did not have probable cause for the arrest, see, e.g., Am. Compl. ¶ 12; Resp. at 10-12, but Deputy Caldwell argues that he had at least arguable probable cause, Caldwell Mot. at 6-10. The undisputed facts show that on September 2, 2007, Deputy Caldwell arrived at the BP gas station at 5:15 p.m. He observed Plaintiff sitting outside the gas station. Deputy Caldwell knew that BP gas station had a trespass affidavit on file authorizing him to direct people to leave the premises due to ongoing problems there. BSO's Operating Procedures provide that a deputy who is aware of a trespass affidavit on file for a business is authorized to advise an alleged trespasser of the offense and ask him to vacate the premises, and if the person does not vacate, the deputy may arrest him. Operating Procedures §§ 4.15.4(A)-(C). Deputy Caldwell states that he spoke to Plaintiff and determined he had no business at the BP gas station. Probable Cause Affidavit. Plaintiff did not vacate the premises, and Deputy Caldwell arrested him. BSO Daily Log at 1; Probable Cause Affidavit at 1; see also Event Report at 4.

Defendants maintain that the above facts suffice to demonstrate the existence of probable cause, but to constitute facts and circumstances sufficient to warrant a reasonable belief that Plaintiff was trespassing, there must be evidence that Plaintiff received a trespass warning. See, e.g., Seago v. State, 768 So. 2d 498, 500 (Fla. Dist. Ct. App. 2000) ("Having issued the trespass notice to Seago and then observing him on the premises, the officers had probable cause to believe that he had committed the offense of trespass" (citing State v. M.A.D., 721 So. 2d 412 (Fla. Dist. Ct. App. 1998)

9

and Melton v. State, 546 So. 2d 444 (Fla. Dist. Ct. App. 1989)). There is no evidence that BP gas station had trespass warning signs posted on its property or that anyone from the station warned Plaintiff. Deputy Caldwell cannot remember the details of the September 2, 2007 incident, so he relies on his records from that day. In his Probable Cause Affidavit, Deputy Caldwell wrote, "it should be noted Defendant [(Mr. Flores Franco)] has received prior trespass warning at this location," Probable Cause Affidavit, but neither Deputy Caldwell nor BSO has produced any record of any trespass warning previously issued to Plaintiff, see Exhibit B to Response, Public Records Request [DE 33-2]. Deputy Caldwell did not write, nor does he remember, how he supposedly knew that Plaintiff had received a prior trespass warning. Defendants seem to suggest in their Reply that Deputy Caldwell warned Plaintiff himself, see Reply at 3, stating, "Plaintiff concedes that Deputy Caldwell spoke to him, but that he did not understand what the Deputy said because he spoke with him in English," id. Yet, Plaintiff's deposition reveals that the conversation Deputy Caldwell's Motion references occurred when Deputy Caldwell pulled up to the Gas Station, told Plaintiff and Mr. Ramirez to stand up, put Plaintiff and Mr. Ramirez against the patrol car, and as he was handcuffing Plaintiff and Mr. Ramirez. See Flores Franco Dep. at 19. Such a recounting of the events does not appear to provide time for Deputy Caldwell to provide a warning, even if that warning was in English. Further, in an affidavit attached to his Response, Plaintiff swears, "From the moment Deputy Caldwell arrived and I was handcuffed, until the time Deputy Caldwell left the BP parking lot in his police vehicle, Deputy Caldwell spoke with no persons other than a young man at a nearby store." Exhibit A to Response, Affidavit of Fidensio Flores Franco [DE 33-1] ("Flores Franco

Affidavit") ¶ 4. In his deposition, Plaintiff swears that neither Deputy Caldwell nor anyone else asked him to leave before his arrest. Flores Franco Dep. at 42:23-43:5.

Looking at the totality of the circumstances in the light most favorable to Plaintiff, the Court cannot conclude that probable cause existed for Plaintiff's arrest, because there is an issue of disputed fact as to whether Plaintiff received a trespass warning prior to his arrest. Accordingly, the Court cannot conclude that arguable probable cause existed. If "there is an insufficient showing of arguable probable cause, then there is clearly an insufficient showing of probable cause." Davis, 451 F.3d at 764 n.7. Consequently, the Court will deny Defendants' Motions for Summary Judgment.

### C. The Disputed Issue of Fact Also Prohibits Summary Judgment on the State Claims

#### 1. Qualified Immunity

In the state context, Florida Statutes § 768.28(9)(a) grants qualified immunity to Florida state employees. The statute provides, in pertinent part:

> No officer, employee, or agent of the state or of any of its subdivisions shall be held personally liable in tort or named as a party defendant in any action for any injury or damage suffered as a result of any act, event, or omission of action in the scope of her or his employment or function, unless such officer, employee, or agent acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property . . .

Fla. Stat. § 768.28(9)(a). "The purpose of [this] qualified immunity . . . is to 'immunize public employees from liability for ordinary negligence, while providing injured claimants a remedy against governmental entities through the waiver of sovereign immunity. This . . . promote[s] vigorous performance of duties by government employees, free from the fear of negligence actions, while at the same time providing redress through

governmental assumption of liability to persons injured by the ordinary negligence of government employees.'" Lemay v. Kondrk, 860 So. 2d 1022, 1023 (Fla. Dist. Ct. App. 2003) (quoting Rupp v. Bryant, 417 So. 2d 658, 671 (Fla. 1982) (Boyd, J., dissenting)).

As applied to this case, § 768.28(9)(a) immunizes Deputy Caldwell, a state employee, from suit and liability in tort as long as he acted within the scope of his employment, and did not act in bad faith or with malicious purpose or in a manner exhibiting wanton disregard of human rights. See Fla. Stat. § 768.28(9)(a); see also Willingham v. City of Orlando, 929 So. 2d 43, 48 (Fla. Dist. Ct. App. 2006) ("Importantly, the immunity provided by section 768.28(9)(a) is both an immunity from liability and an immunity from suit . . ."). As discussed above, Deputy Caldwell's actions while on patrol as a deputy, observing Plaintiff, approaching him and talking to him, arresting him, and escorting him to jail, fell within the scope of his employment. See Hutton, 919 F.2d at 1537; Riebsame, 267 F. Supp. 2d at 1237. However, under Florida law, "malice may be inferred from the absence of probable cause." Colonial Stores, Inc. v. Scarbrough, 355 So. 2d 1181, 1185 (Fla. 1977). Thus, the factual dispute precludes a determination that Deputy Caldwell did not act with malice. The Court therefore cannot determine whether Deputy Caldwell was immune from suit and liability on the state law claims.

### 2. Liability for State Claims

In case Deputy Caldwell was not immune from the state claims, Defendants also argue that the existence of probable cause bars Plaintiff's tort claims against Deputy Caldwell and BSO. The Amended Complaint brings two tort claims against BSO and Deputy Caldwell: false arrest/false imprisonment against BSO (Count II), or alternatively against Caldwell in his individual capacity (Count III); and malicious prosecution against

12

Caldwell (Count IV). See Am. Compl. ¶¶ 28-47.

### a. False Arrest/False Imprisonment

To prevail on a claim for false imprisonment or false arrest,[1] a Plaintiff must show that he was "unlawfully restrained without color of authority." Everett v. Fla. Institute of Tech., 503 So. 2d 1382, 1383 (Fla. Dist. Ct. App. 1987). The existence of probable cause is a defense to false arrest and false imprisonment. Daniel v. Vill. of Royal Palm Beach, 889 So. 2d 988, 990 (Fla. Dist. Ct. App. 2004) ("in a false arrest case, the existence of probable cause is an affirmative defense."); see also Jackson v. Navarro, 665 So. 2d 340, 342 (Fla. Dist. Ct. App. 1995) ("in false arrest the lack of probable cause is not an element which plaintiff must prove, but is rather an affirmative defense."). The standard of probable cause for a lawful arrest is the same under Florida law and federal law. See United States v. McDonald, 606 F.2d 552, 553 n.1 (5th Cir. 1979).

The false arrest/false imprisonment claim against BSO alleges liability based on the absence of probable cause and actions committed within the course and scope of Defendant Caldwell's employment with BSO. Am. Compl. ¶¶ 29-31. Alternatively, the false arrest/false imprisonment claim against Deputy Caldwell alleges liability based on the absence of probable cause and actions "committed outside the course and scope of Defendant Caldwell's employment, or in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property, the

---

[1] "False arrest and false imprisonment are different labels fro the same cause of action." Weissman v. K-Mart Corp., 396 So. 2d 1164, 1165 n.1 (Fla. Dist. Ct. App. 1981) (citing Jackson v. Biscayne Med. Center, Inc., 347 So. 2d 721, 723 (Fla. Dist. Ct. App. 1977).

13

conduct of Defendant Caldwell occurred in his individual capacity." Id. ¶¶ 35-37. As discussed above, there is no evidence that Deputy Caldwell acted outside the scope of his employment, but disputed issues preclude a ruling on whether he had probable cause to arrest Plaintiff, and consequently, whether he acted with malicious purpose. Therefore, the Court will deny summary judgment as to the false arrest/false imprisonment claim.

### b. Malicious Prosecution

To prevail on a claim for malicious prosecution, a Plaintiff must show: "(1) an original criminal or civil judicial proceeding against the present plaintiff was commenced or continued; (2) the present defendant was the legal cause of the original proceeding against the present plaintiff as the defendant in the original proceeding; (3) the termination of the original proceeding constituted a bona fide termination of that proceeding in favor of the present plaintiff; (4) there was an absence of probable cause for the original proceeding; (5) there was malice on the part of the present defendant; and (6) the plaintiff suffered damage as a result of the original proceeding." Alamo Rent-A-Car, Inc. v. Mancusi, 632 So. 2d 1352, 1355 (Fla. 1994) (citations omitted). Failure to establish any one of these elements is fatal to the claim. Id.

Defendants argue that Plaintiff's claim fails because he has not established the absence of probable cause and malice elements. As discussed above, a factual dispute precludes a determination as to the existence of probable cause, and because malice may be implied from the absence of probable cause, the dispute necessarily precludes a determination as to malice as well. Therefore, the Court will deny summary judgment as to the malicious prosecution claim.

14

## IV. CONCLUSION

Based on the foregoing, it is hereby

**ORDERED AND ADJUDGED** as follows:

1. Defendant Christopher Caldwell's Motion for Summary Judgment [DE 29] is **DENIED**;

2. Defendant Alfred T. Lamberti's Motion for Summary Judgment [DE 30] is **DENIED**.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, on this __6th__ day of June, 2011.

_____
JAMES I. COHN
United States District Judge

Copies provided to:
Counsel of record via CM/ECF